in the District Court, Southern District of New York, Edison, a patentee, was suing for an infringement of his patent, No. 802,631, for an apparatus for burning Portland cement clinker. The claims in question rested upon the use of a tubular kiln, "upward of 100 feet in length." Although the claims were for an apparatus, the court felt called upon to discuss the process involved. The patentee claimed that, in using this particular length, much longer than any theretofore used, he derived certain new and useful results. The court, in holding the Edison patent invalid, said in part:

"Obviously, as a general proposition, there is nothing patentable in making a machine or apparatus larger or smaller, if it produces the same result in the same manner. * * * The evidence satisfies me that in kilns of all sizes whether the action in the calcining zone overlaps the action in the combustion zone depends very largely upon the operation of the kiln. The operator can introduce at will a longer or shorter blast; he can revolve the kiln more slowly or more rapidly; he can feed into the kiln a larger or smaller amount of cement material; and it depends largely upon the manner in which the kiln is operated whether the calcining process is substantially completed before the material is subjected to the heat in the combustion zone, and the best results obtained generally.

" * * * It is in fact simply a claim for a patent for a larger kiln than was in common use when the patent was taken out. If this patent can be sustained, the man who first made a 60-foot kiln could have taken out a similar patent which would be infringed by the use of any longer kiln. The first claim is for a kiln 100 feet long. A kiln 99 feet long does not infringe, but a kiln 101 feet does infringe, if this claim is valid."

This judgment was affirmed, and the case appears, in (C. C. A.) 219 F. 895, and was approved by the Court of Appeals of the District of Columbia in Re Pruden, 273 F. 362, 50 App. D. C. 398.

It is said that this device has been proved to be a commercial success, and that therefore this should be taken into account in passing upon its patentability. In support of this position, appellant cites Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. It is true such evidence may be at times weighty, but, as said in the case cited, "it is not conclusive and may be explained." Certainly it ought not to be adverted to where it is obvious that the claim-

ant has disclosed no invention. In re Daniel (Cust & Pat. App.) 34 F. (2d) 994.

Schlaich v. Robertson (D. C.) 26 F. (2d) 681, is not in conflict with this. The case cited involved the production of capillary tubing of small size, something that had theretofore not been accomplished, and which tubing was of use simply because of its minute size.

The Examiner held that the adjudication on the original application, being upon the same disclosure and practically the same claims, was binding upon him, and gave sufficient reason for a denial of the claims here. In doing so, he called attention to the language of claim 1 of said original application, where the gases were said to "travel through the tubes at a mean velocity of not less than 40 feet per second." This velocity, it appears from papers submitted by the application, is the same as a flow of at least four thousand pounds per hour. The Board, however, did not decide the matter upon this claim of res adjudicata, but called attention to the fact that the claims in the later case referred to the use of dust-laden gases, thus differing from the original claims, and, having done so, proceeded to dispose of the matter upon its merits. There is, therefore, no error in this respect.

The decision of the Board of Appeals is affirmed.

Affirmed.

## In re DUNN.

Patent Appeal No. 2333.

Court of Customs and Patent Appeals.
May 25, 1930.

Harry F. Riley and Arthur S. Browne, both of Washington, D. C., for appellant.

768

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an appeal from the decision of the Board of Appeals affirming the decision of the examiner in rejecting claim 7 of appellant's application for a patent, Serial No. 109,702, filed May 17, 1926. Other claims were involved, but by allowance and elimination the only one left for our consideration is, as has been said, claim 7. This claim is as follows:

"7. The method of cleaning wells comprising supplying a charge of water into detritus in the well, loosening the detritus and commingling the detritus with the water by means of air delivered through the water into the detritus from above the detritus, and propelling the water and detritus from the well by means of a following volume of air under pressure."

Appellant has invented a method of cleaning the detritus out of the bottom of an oil well which has been shot, which he claims is different from any method heretofore practiced, and which produces new and useful results. In this process he inserts tubing into the casing of said well downward to a point where it is above and clear of the said detritus. He then injects water into the cavity containing the detritus until it rises above the end of the tubing. This being done, he then discharges compressed air into and through this tubing, into the water above the detritus. He claims that by discharging the air in this manner into the water, the detritus is stirred up, mixed with the water, and more readily forced upward around the tubing and out of the well through the surrounding casing. He claims the art heretofore has been to insert the tubing into the detritus and then inject the compressed air, and this, he claims, will not produce the same result.

Both the examiner and the board reject claim 7 on reference to "Richards' Compressed Air Practice—Article on pages 293 and 294, entitled 'The Air Blast Foundation Sinking'—McGraw Hill Book Co., New York, 1913."

It is agreed in the briefs of both the solicitor of the Patent Office and counsel for appellant that the portion of Richards' which is held to be a reference is as follows:

"The Air Blast in Foundation Sinking.— A contracting company in New York City is making a specialty of the use of the air blast as an aid in sinking building foundations. In this work the foundations are sunk to rock which is overlaid by varying depths of gravel or other compacted material. A recent undertaking was the construction of the foundations for a large twelve-story building where the rock was below the surface at depths ranging from 17 to 50 ft. When completed the foundation consists of a series of reinforced concrete structures, these being formed of groups of 12-in. steel pipe filled with concrete among which are distributed vertical reenforcing rods of steel.

"The pipes used are in lengths of 12 or 14 ft. and in the deepest parts three or four of these are required, one above the other. Each pipe, after being properly located in a vertical position is driven down a few feet by an air-operated pile-driving hammer, placed upon the top of it.

"The pipe having been thus driven a certain distance the hammer is lifted off by a derrick, the pipe is filled with water, a compressed-air pipe is thrust down as far as it will go and also a test rod which is used to ascertain when the solid rock is reached.

"On the street close to the work is located a 20-in. steam actuated air-compressor and a large receiver. The compressor is speeded up and when the receiver is filled to the highest working pressure, all the air is suddenly turned into the foundation pipe, blowing out the water, the dirt and the stones."

It will be observed that Richards teaches in this excerpt that the compressed air pipe should be thrust down into the bottom of the hole made for a building foundation "as far as it will go." If this method were applied to an oil well containing detritus, the compressed air pipe would be sunk through the water and into the detritus as far as it could be forced. Appellant illustrates this very aptly by drawings contained in his brief, and the correctness of these drawings is not controverted by the Patent Office.

The argument is made that the language of the claim, "by means of air delivered through the water into the detritus from above the detritus," might well be covered by the Richards disclosure, for Richards draws his air from a tank in the air "above the detritus." It is manifest, from appellant's drawings and specifications, that this is not the sense in which his disclosure should be understood. He pictures and describes a

process in which his air pipe is carried from the surface, down into the water, and discharges its air into the water at a point therein above the surface of the detritus. This is, plainly, his disclosure.

In our judgment, the teaching of Richards is not anticipatory of the method used by the appellant here. The appellant makes a point of the proposition that he does not permit his air pipe to enter the detritus. Richards does. There is therefore this essential difference in the process.

The question of whether the process suggested by appellant is operative is not involved here. His claim 7 was not rejected on that ground, but on the reference above stated. Being of the opinion that Richards did not anticipate the appellant in claim 7, it follows, therefore, that the decision of the Board of Appeals should be and is reversed, and a patent will issue on said claim 7, as requested.

Reversed.

LENROOT, Associate Judge, dissents.

**PIERSON v. BECK.**
Patent Appeal No. 2340.

Court of Customs of Patent Appeals.
May 28, 1930.

Eakin & Avery, of Akron, Ohio (Parker Dodge, of Washington, D. C., of counsel), for appellant.

Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich. (Clarence B. Zewadski, of Detroit, Mich., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals reversing the decision of the Examiner of Interferences awarding priority of invention to appellant, Robert M. Pierson.

The invention relates to a door-check specially adapted for use on automobile doors. It is sufficiently described in the count of the issue, which reads:

"The combination with a swinging door and its frame of a flexible, resilient link connecting said door and frame and adapted to attain a condition of initial strain when the door has reached a relatively-wide opening, said link being essentially composed of vulcanized soft rubber compound."

Appellant, the senior party, filed his application for a patent on August 2, 1923.

Appellee filed his application on March 3, 1924.

Appellant moved to dissolve the interference on the ground that appellee could not make the claim in issue. The motion was denied by the Law Examiner.

In his preliminary statement, appellee alleged that he conceived the invention on or about December 5, 1921; that on or about December 6, 1921, he made and attached the device in issue to an automobile and successfully operated it; that he disclosed the invention to others on or about December 10, 1921; and that on or about March 1, 1922, he made drawings of the invention and a mold for the device, and immediately thereafter manufactured and successfully operated many of the involved devices.

As appellant submitted no evidence, he is restricted to his filing date—August 2, 1923—for conception and constructive reduction to practice.